

500 E Main Street, Suite 1400
Norfolk, VA 23510
Tel: (757) 904 5373

299 Broadway, Suite 1816
New York, NY 10007
Tel: (212) 548 3212

**MEMO ENDORSED**

December 21, 2021

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/27/21

**Via ECF**

The Honorable Barbara Moses
United States Magistrate Judge
Daniel Patrick Moynihan
 United States Courthouse
500 Pearl Street
New York, New York 10007

*Trireme Energy Holdings, Inc. v. Innogy Renewables US, LLC*, 20-cv-5015 (VEC)

Dear Judge Moses:

  This firm represents plaintiffs Trireme Energy Holdings, Inc. and Trireme Energy Development, LLC (collectively, "Trireme") in this action. We submit this letter to raise additional issues for the conference previously scheduled for January 6, 2022. (ECF 95.)

  Unfortunately, discovery in this case has been difficult. Judge Caproni has had to intervene several times and, regrettably, further judicial intervention is necessary. Defendants have withheld documents under dubious privilege claims, refuse to make key witnesses available for depositions, and insist on inappropriately limiting the length of key depositions. Trireme respectfully requests that the Magistrate (i) review certain documents in camera; (ii) order defendants to produce all relevant witnesses; and (iii) order defendants to allow additional testimony from certain witnesses.

**Background**

  In 2017, Trireme sold defendant Innogy Renewables US ("Innogy US") the development rights to a large windfarm project in upstate New York called Cassadaga. Under then-current federal laws, regulations, and IRS guidance, the Cassadaga project would generate significant tax credits (and achieve its highest potential return on investment) if the windfarm began commercial operation no later than December 31, 2020. As defendants' former CEO for US operations, Andrew Young, admitted at his deposition, completing the project by achieving "commercial operation" in 2020, was "fundamental" to the deal.[1] Innogy US thus agreed to pay Trireme a "Milestone Payment" of $69.7 million if the project achieved commercial operation by the end of

---

[1] "Q. . . . When you negotiated the merger agreement in Exhibit 8, a 2020 COD [commercial operation date] was fundamental to the business case for the Cassadaga project, right? A. Yes . . . ." (Ex. 1 at 351:5-16 (objection excluded).)

#153568v5

2020. Again, Mr. Young admitted that the "entire negotiation would have been different" if the parties had contemplated qualifying for the tax credits, and achieving commercial operation, in 2021.[2]

As a result of the Covid-19 pandemic and related economic disruption, the IRS issued guidance in May 2020 that effectively extended by a full year the deadline, for tax-credit purposes, to complete the Cassadaga project. This change undermined the parties' fundamental bargain entirely in defendants' favor—if the project did not achieve commercial operation until sometime in 2021, defendants would reap a windfall by obtaining all of the expected tax credits yet arguably owe Trireme *nothing* under a myopic reading of the parties' agreement. A delay would potentially save defendants $69.7 million—an outcome the parties never contemplated or intended.

Unsurprisingly, the Cassadaga project did not get back on schedule after a 43-day state-mandated Covid shutdown. Instead, Innogy US actively lobbied to change the tax-credit deadline, openly contemplated other ways to obtain the tax credits in 2021, and failed to take *any* steps to get back on schedule after the delay.[3] In September 2020, defendants officially decided to delay commercial operation of Cassadaga until 2021. Defendants never paid the $69.7 million.

**Discovery Disputes**

As noted in defendants' December 17, 2021, letter (ECF 94), the parties have engaged in lengthy negotiations about numerous discovery issues, including defendants' failure to produce certain key witnesses. The parties appeared before Judge Caproni to address those issues on December 8, 2021. On December 16, 2021, I called defendants' counsel Eli Richlin to request additional time to depose defendants' former employee Jeff Puterbaugh. I spoke to Mr. Richlin again on December 20, 2021 about that issue and about defendants' revised privilege log.

  A.  **Defendants' Revised Privilege Log**

Defendants produced a privilege log on October 8, 2021. The log contained over 16,000 entries. As to thousands of the documents identified in the October 8 log, the log failed to support defendants' assertion of privilege. For example, the log identified: 119 documents sent or received by Trireme employees; 1,362 emails that included third parties; 462 emails that included defendants' financial advisor but no lawyers; 2,783 emails that did not include lawyers; and 377 emails with a lawyer copied on communications between businesspeople.

Defendants refused to re-review all but 250 of these documents, and Trireme requested a conference with Judge Caproni. The Judge commented during the conference that many of

---

[2]  "Q. If the parties had known that Cassadaga would be able to qualify for 100 percent tax credits with a 2021 COD, you would agree that the negotiations about the earnout date or the milestone date would have been different, right? A. The entire negotiation would have been different and the earnout amounts may have been different." (Ex. 1 at 355:14-356:23 (objection excluded).)

[3]  Although Innogy US "accelerated" construction in response to construction delays in 2019, and although the Innogy US construction team consistently stressed the importance of acceleration to remain on target for 2020 completion, the project's construction manager Jeff Puterbaugh admitted that Innogy US *never* implemented any such plans in response to Covid delays: "Q. So the answer is no, you did not implement any acceleration plans, correct? A. That's correct." (Ex. 2 at 216:2-4.)

#153568v5

defendants' entries were "*not* presumptively privileged"[4] and ordered the parties to meet and confer for three hours about defendants' log. After doing so, defendants agreed to re-review about 7,500 documents.

After completing their review, defendants produced about 5,000 documents in full, and continued to withhold or redact 2,621. Defendants produced a revised privilege log on December 17, 2021. It contains numerous entries of concern, including: emails between business people with no lawyer included; emails with third parties; and emails that—based on subject line and participants—appear to be predominately, if not exclusively, business communications.

Although defendants' counsel expressed willingness to consider additional objections to their revised privilege log, it is Trireme's position that further objections and negotiations are no longer appropriate. We objected. The parties conferred for hours. After re-reviewing thousands of documents, defendants still assert questionable privilege claims. At this point, it no longer makes sense to reiterate our objections or ask defendants to re-review documents *again*. Rather, we respectfully ask that Your Honor allow Trireme to submit a list of documents for in-camera review.

B. **Depositions of Key Witnesses**

Discovery has shown that defendants failed to identify key senior executives as custodians when collecting documents. Defendants have justified this failure by arguing that its senior executives had nothing to do with the $70 million decision to complete the Cassadaga project in 2021—rather than 2020, as contemplated in the parties' merger agreement. This position is implausible, and it is undermined by the documents produced to date.

Trireme recently asked defendants to produce two senior executives for deposition: Sylvia Ortin-Rios and Katja Wunschel. Defendants flatly refused to produce either.

The record shows that Ms. Ortin-Rios personally participated in efforts to lobby the government on behalf of Innogy US for an extension of the safe-harbor deadline for renewable-energy tax credits.[5] That is, she took active steps to change the tax rules so that Cassadaga did not need to achieve commercial operation by December 2020, an effort which ultimately succeeded. Trireme is entitled to examine Ms. Ortin-Rios about these, and other, key activities.

Ms. Wunschel spearheaded Innogy US's Covid response, including its assessment of risks to the Cassadaga project. On March 26, 2020, senior construction manager Jeff Puterbaugh wrote to members of the finance team that he had "an urgent need coming from Katja [Wunschel] and the top management to understand some potential impacts if we experience COVID-19 delays," including the lost value "if Cassadaga goes into 2021 and loses PTC/ITC [tax credit] qualification."[6] In response, Puterbaugh and others provided Ms. Wunschel—as early as March 28, 2020—with a Covid update explaining that Innogy US could potentially achieve COD in 2021

---

[4] Ex. 3 at 23 (emphasis added).

[5] Ex. 4 ("Sylvia was pushing hard for 2 years [extension] at [industry group] AWEA but we got rolled").

[6] Ex. 5.

3

#153568v5

*without* losing Cassadaga's valuable tax credits.[7]

Ms. Wunschel remained involved in Innogy US's Covid-response planning. As Jeff Puterbaugh put it in an April 2020 email, "Our top executive would like to know what the schedule and cost impact will be at Cassadaga."[8] On April 14, he wrote Ms. Wunschel a detailed email about the work shutdown at Cassadaga and its potential impact on the commercial operation date.[9] These types of communications continued.

These and other documents provide a strong evidentiary basis for concluding that Ms. Ortin-Rios and Ms. Wunschel are likely to have information about Innogy US's Covid response that is both material to this case and unavailable from other sources. We respectfully request that the Court order defendants to produce these witnesses.

### C. Additional Time to Depose Mr. Puterbaugh

Jeff Puterbaugh was the senior construction manager for the Cassadaga project. He is a key witness as to defendants' failure to achieve commercial operation in 2020, and the parties do not expect him to appear at trial. This is Trireme's only opportunity to take his testimony.

Defendants insisted for *weeks* before his deposition that Mr. Puterbaugh would appear for only one day, and agreed to produce him for a full 7 hours of cross examination only after extensive negotiation and threats to raise the issue with Judge Caproni. The parties began Mr. Puterbaugh's deposition on December 14. Each side used a little over three hours of record time. Although we used the time as efficiently as possible, we respectfully submit that Mr. Puterbaugh's cross examination will take at least five or six more hours.[10]

Defendants previously requested additional time to depose Trireme president Jim Spencer. Trireme objected because defendants were unable to articulate any legitimate reason for needing more than 7 hours to depose Mr. Spencer. Defendants raised this issue with Judge Caproni on December 8. On December 16, I spoke with Mr. Richlin and proposed the following compromise: Trireme would produce Mr. Spencer for a total of 9 hours of examination by defendants' counsel if defendants would produce Mr. Puterbaugh for a total of 9 hours of examination by Trireme's counsel. Rather than responding to this proposal, Mr. Richlin filed a pre-conference letter asking the Magistrate to order Mr. Spencer to appear for additional time. (ECF 94.)

Having rejected the proposed compromise, Mr. Richlin nevertheless informed me that defendants had not yet arrived at a position on Trireme's request for additional time to depose Mr. Puterbaugh. Although open to further negotiation, given prior negotiations about Mr. Puterbaugh's deposition, we ask that Your Honor resolve this issue without further delay.

---

[7]   Exs. 6, 7.

[8]   Ex. 8.

[9]   Ex. 9.

[10]  We attach a copy of Mr. Puterbaugh's rough transcript as exhibit 2. We believe the transcript reflects our effort to examine Mr. Puterbaugh as efficiently as possible, in light of his key role in the construction of the Cassadaga Project.

4

#153568v5

We look forward to discussing these issues with the Court, at Your Honor's convenience.

Respectfully,

Nathaniel E. Marmon
The Law Offices of John F. Baughman
*Counsel for Plaintiffs Trireme Energy Holdings, Inc. and Trireme Energy Development, LLC*

cc:   All counsel of record via ECF

---

Defendants' opposition letter is due **December 29, 2021**. *See* Moses Ind. Prac. § 3(e). Plaintiffs' reply letter is due **January 4, 2022**. The Court will consider the disputes raised by plaintiffs, as well as the disputes raised by defendants, during the **January 6, 2022** conference. SO ORDERED.

Barbara Moses
United States Magistrate Judge
December 27, 2021

5

#153568v5