UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRIREME ENERGY HOLDINGS, INC., et al.,

Plaintiffs,

-against-

INNOGY RENEWABLES US LLC, et al.,

Defendants.

20-CV-5015 (VEC) (BCM)

**ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

Now before the Court is plaintiffs' letter-application, dated February 17, 2022 (Pl. Ltr.) (Dkt. No. 118), seeking an order compelling defendants to "produce fully unredacted versions of certain documents that defendants have selectively and improperly redacted for confidentiality." Pl. Ltr. at 1. For the reasons that follow, plaintiff's application will be granted.

## Background

Plaintiffs Trireme Energy Holdings, Inc. and Trireme Energy Development, LLC (collectively Trireme) allege that defendant Innogy Renewables US LLC (Innogy) and certain affiliates intentionally delayed construction on a renewable energy project known as the Cassadaga Project in order to avoid a milestone payment of almost $70 million which would otherwise have been due to Trireme in December 2020 under the parties' Merger Agreement. *See* Second Amend. Compl. (Dkt. No. 43) ¶ 17. Plaintiffs allege that defendants thereby breached the Merger Agreement and the implied covenant of good faith and fair dealing. *Id.* ¶¶ 116-29, 153-57; *see also* Op. and Order (Dkt. No. 67) (denying defendants' motion to dismiss plaintiffs' claim for breach of the implied covenant but granting motion as to various tort claims).

In their letter-application, plaintiffs argue that defendants improperly redacted portions of 14 different emails for reasons other than privilege, and further assert that the redacted material is relevant to this action because the emails concern the circumstances under which Jeffrey

Puterbaugh, Innogy's former senior director of construction, left his employment with Innogy in November 2020. Pl. Ltr. at 1. It is undisputed that Puterbaugh, who managed the Cassadaga Project until his departure, is an important witness in this action. Indeed, plaintiff's letter-application was filed just days before the second session of Puterbaugh's deposition, and sought emergency relief in the form of an order compelling defendants to produce the unredacted emails (at least on an attorneys'-eyes only basis) prior to that session. *Id*. at 2. Moreover, as plaintiffs pointed out, defendants put the circumstances of Puterbaugh's departure "at issue," during the first day of his deposition, by eliciting testimony to the effect that he left Innogy voluntarily. *Id*. However, the urgency of plaintiffs' plea was somewhat undercut by their concession that they received the redacted emails months earlier and were well aware, also for months, that defendants had "redacted certain documents for confidentiality." *Id*.

After a telephonic conference on February 18, 2022, I denied the application insofar as it sought emergency relief in advance of the continued Puterbaugh deposition, and directed the parties to submit additional briefing. (Dkt. No. 120.)

Defendants filed their opposition letter-brief on February 23, 2022 (Def. Opp. Ltr.) (Dkt. No. 123). With regard to the 14 emails identified in plaintiffs' moving letter, defendants argue: (i) that plaintiff's application was made too late; (ii) that "the redacted material regarding Jeff Puterbaugh's departure from Innogy is both highly confidential and irrelevant"; (iii) that plaintiffs' "seeming motive is to embarrass Mr. Puterbaugh at his deposition"; and (iv) that although the Court has issued a Stipulated Confidentiality Agreement and Protective Order (Protective Order) (Dkt. No. 35), plaintiffs cannot be trusted to comply with it, having mistakenly filed "confidential" materials on the public docket of this action more than once (each time apologizing and promptly obtaining a temporary sealing order). Def. Opp. Ltr. at 2-3.

With regard to other discovery documents that they redacted for reasons other than privilege before producing, defendants argue: (i) that the content they excised is irrelevant to this action because it "generally relates to other projects in development by Innogy . . . not the Cassadaga Project," and (ii) that disclosure of such information would present a "competitive risk," which is "real and pressing," because Trireme's principal, James Spencer, "is an active renewable energy developer who is in direct competition" with a company called RWE Renewables Services, LLC, which is Innogy's successor by merger. Def. Opp. Ltr. at 3-4.

In their reply letter-brief, also filed on February 23, 2022 (Pl. Reply Ltr.) (Dkt. No. 124), plaintiffs apologize for filing confidential information on the docket, represent that they have "put additional protocols in place to make sure we never make the same mistake again," and assert that Spencer is merely "the managing partner of an asset-management platform" and as such is not in competition with Innogy's successor. Pl. Reply Ltr. at 1-2.[1]

## **Analysis**

In this Circuit, "[t]he weight of authority . . . goes against allowing a party to redact information from admittedly responsive and relevant documents 'based on that party's unilateral determinations of relevancy.'" *Christine Asia Co. v. Alibaba Grp. Holding Ltd.*, 327 F.R.D. 52, 54 (S.D.N.Y. 2018) (quoting *Cyris Jewels v. Casner*, 2016 WL 2962203, at *4 (E.D.N.Y. May 20, 2016) and collecting cases). Similarly, unilateral redactions based on concerns about personal privacy or business sensitivity are routinely disallowed, particularly where a protective order is in place allowing the parties to designate that information "confidential" and restrict its use. *See id*.

---

[1] Plaintiffs also used their reply letter-brief to request a quick decision by the Court, arguing that although by then the Puterbaugh deposition was concluded, the redacted documents would also be relevant to depositions scheduled between February 24 and March 2, 2022. Pl. Reply Ltr. at 1. Given plaintiffs' lack of diligence in bringing the motion, however, the Court did not feel obligated to decide it on the compressed schedule that they preferred.

at 55 (the parties' stipulated protective order "addresses any concerns that Defendants may have regarding the confidential or sensitive nature of the information redacted from documents"); *Coventry Capital US LLC v. EEA Life Settlements Inc.*, 2020 WL 7383940, at *9 (S.D.N.Y. Dec. 16, 2020) (compelling EEA to produce unredacted documents because it identified "no persuasive grounds to depart from the general rule prohibiting relevance redactions" and because any "confidential or highly sensitive documents" could be "designated as confidential"), *objections overruled,* 2021 WL 961750 (S.D.N.Y. Mar. 15, 2021).[2]

A court may, of course, permit redactions on "a finding of 'good cause' based on a need 'to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *Howell v. City of New York*, 2007 WL 2815738, at *2 (E.D.N.Y. Sept. 25, 2007) (quoting Fed. R. Civ. P. 26(c)(1)). However, "[t]o establish good cause under Rule 26(c), courts require a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Rep. of Turk. v. Christie's, Inc*., 312 F. Supp. 3d 385, 388 (S.D.N.Y. 2018).

---

[2] *See also*, *e.g.*, *Berney* v. *Apple Inc.*, 2021 WL 6334985, at *2-4 (D. Conn. May 27, 2021) (ruling that defendant was not entitled to make "unilateral redaction determinations" on relevance or confidentiality grounds and that the parties' existing protective order "certainly suffices to protect the information at issue," including names and personnel information of potential non-party comparitors); *New Falls Corp. v. Soni*, 2020 WL 2836787, at *14 (E.D.N.Y. May 29, 2020) (finding "no reason to depart from the general rule that relevance redactions are improper" and compelling production of unredacted documents revealing "financial information regarding third-party entities"); *Durling v. Papa John's Int'l, Inc.*, 2018 WL 557915, at *9 (S.D.N.Y. Jan. 24, 2018) (granting motion to compel production of unredacted documents because "redactions on grounds of non-responsiveness or irrelevance are generally impermissible, especially where, as here, a confidentiality stipulation and order . . . is in place"); *John Wiley & Sons. Inc. v. Book Dog Books, LLC,* 298 F.R.D. 184, 186 (S.D.N.Y. 2014) ("[R]edactions of portions of a document are normally impermissible unless the redactions are based on a legal privilege."); *In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*, 2009 WL 1026013, at *1 (S.D.N.Y. Apr. 8, 2009) (directing parties not to "redact any portion of a document on the ground that the portion is non-responsive and irrelevant" because such redactions "breed suspicions" and "may deprive the reader of context"); *In re Restasis (Cyclosporins Opthalmic Emulsion) Antitrust Litig.*, 2018 WL 3007926, at *1 (E.D.N.Y. June 4, 2018) (denying party's request that it be "be permitted to redact competitively sensitive portions of responsive documents that it determines are not relevant").

"The burden to show good cause falls on the party seeking a protective order." *Trellian Pty, Ltd. v. adMarketplace, Inc.*, 2021 WL 363965, at *3 (S.D.N.Y. Feb. 3, 2021).

In *Trellian* (upon which defendants rely, *see* Def. Opp. Ltr. at 4), Judge Cave found good cause for certain redactions made by non-party Resilion to the documents it produced in response to a subpoena served upon it by defendant AMP – after Resilion showed that it and AMP were "not only competitors generally, but have been in competition with respect to the macy.com traffic that is the subject of this action," 2021 WL 363965, at *4. The court further noted that the redactions were "narrowly tailored to shield only 'commercially sensitive' information such as Resilion's other clients' names, actual and projected budget figures, performance metrics, and other business performed for Macy's, Inc.," which, in any event, the court determined to be "not relevant" to the dispute between AMP and Trellian. *Id*. On balance, the court concluded, requiring Resilion to produce irrelevant and "highly sensitive commercial information to its direct competitor" would impose an "undue burden" on a non-party. *Id*. This factor, she noted, was "not at issue" in *Coventry Capital*, where the same judge had declined to "depart from the general rule prohibiting relevance redactions." *Id*. (quoting *Coventry Capital*, 2020 WL 7383940, at *9).

Here, as in *Coventry Capital*, I see no reason to struggle against "[t]he weight of authority," which teaches that parties may not unilaterally redact otherwise discoverable documents for reasons other than privilege. *Christine Asia Co.*, 327 F.R.D. at 54. The discovery is sought from defendants, not from a non-party. To the extent the redacted portions of the 14 challenged emails concern the circumstances of or terms under which Puterbaugh left defendants' employ, they are relevant, at minimum, to the "potential bias or prejudice" of a key witness. *See Morgan Art Found. Ltd. v. McKenzie*, 2020 WL 3578251, at *5 (S.D.N.Y. July 1, 2020) (requiring two defendants, including Thomas, to produce a settlement agreement they had reached in a related litigation

5

because Thomas was "a pivotal witness" in the case where production was sought and the settlement agreement was relevant to his credibility). And while I agree that information such as "severance pay, bonus pay, [and] negotiation of a separation agreement" may be considered "highly sensitive and confidential" by the departing executive, Def. Opp. Ltr. at 3, I am not persuaded that the existing Protective Order is an insufficient shield against its inadvertent disclosure. Plaintiffs must by now realize – and if they do not they are hereby placed on notice – that any further violations of the Protective Order will be sanctionable. Finally, while plaintiffs should have filed their motion earlier, it is a sufficient penalty for their tardiness that they were not able to obtain the unredacted documents in time to use them at the Puterbaugh deposition. Depriving them of any relief at all for defendants' frank disregard of "the general rule prohibiting relevance redactions," *Coventry Capital*, 2020 WL 7383940, at *9, would be unjust.

   As for the remaining redacted material, which according to defendants "generally relates to other projects in development by Innogy," Def. Opp. Ltr. at 3, defendants have made a significantly weaker argument than Resilion mounted in *Trellian*, where it was able to show that it directly competed with the party seeking disclosure with respect to the precise business at issue in the case. Here, defendants state in their letter-brief that plaintiffs' principal, Spencer, "is an active renewable energy developer," but make no claim that Spencer is in competition with defendants concerning any of the projects "in development by Innogy" that are discussed in the redacted portions of the documents at issue. Moreover, plaintiffs flatly deny defendants' characterization. While neither side has backed up its claim with evidence, it is defendants who bear the burden of showing "good cause" for what would in effect be a protective order permitting them to redact otherwise discoverable documents. *Trellian*, 2021 WL 363965, at *3. Consequently, I will apply "the general rule that relevance redactions are improper." *New Falls Corp.*, 2020 WL

2836787, at *14. If defendants believe the existing Protective Order is insufficient to guard against competitive misuse of information concerning other renewable energy projects, they may negotiate (and, if that fails, seek an order authorizing) an "attorneys' eyes only" arrangement to govern such materials.

## Conclusion

For the reasons set forth above, plaintiffs' letter-application is GRANTED to the extent that, within 14 days of the date of this Order, defendants are to remove any and all redactions that they have applied for reasons other than privilege to the documents they have produced in discovery, and re-produce the affected documents in unredacted form (or, if applicable, redacted only for privilege). Nothing in this Order prevents defendants from redacting the information specified in Fed. R. Civ. P. 5.2(a).

Dated: New York, New York
March 3, 2022

**SO ORDERED**.

_____
**BARBARA MOSES**
**United States Magistrate Judge**