**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| TRIREME ENERGY HOLDINGS, INC.; and TRIREME ENERGY DEVELOPMENT, LLC, <br><br> *Plaintiffs,* <br><br> v. <br><br> RWE RENEWABLES AMERICAS, LLC, and RWE RENEWABLES SERVICES, LLC <br><br> *Defendants.* | No. 22-cv-07439 (JLR) <br> [rel. 20-05015 (JLR) (BCM)] |

**CASE MANAGEMENT ORDER RE:**
**DOCUMENT AND ELECTRONICALLY STORED INFORMATION**
**PRODUCTION PROTOCOL**

## I.     PURPOSE

This Order will govern the Parties production of Documents and Electronically Stored Information (ESI), by Plaintiffs and Defendants (the "Parties") as those terms are defined below, in fulfillment of their discovery obligations under Rules 26 and 34 of the Federal Rules of Civil Procedure. This Order shall apply to the production of Hard-Copy and electronic documents.

The production of Documents and ESI by the Parties shall also be subject to the provisions of any orders concerning confidentiality, privilege, and/or protected personal information as agreed to among the Parties and/or entered by the Court.

Except as to matters addressed in this Order, the Parties reserve all objections under the Federal Rules of Civil Procedure and other applicable authority.

Nothing in this Order shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity. The Parties do not waive any objections to the discoverability,

admissibility, or confidentiality of Documents or ESI. Nothing in this Order shall be interpreted to supersede the provisions of any orders governing confidentiality, privilege, and/or protected personal information entered by the Court in this litigation, unless expressly provided for in such an order.

## II.    DEFINITIONS

1.    "Confidentiality Designation" means the legend affixed to Documents or ESI for confidential information as defined by, and subject to, the terms of any order concerning confidentiality agreed to and/or entered by the Court in this litigation.

2.    "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure, and shall include Hard-Copy documents, electronic documents, and ESI as defined herein.

3.    "Electronic Documents, Electronic Data, and/or Electronically Stored Information" (collectively, "ESI") means documents or data existing in electronic form at the time of collection, including but not limited to: email or other means of electronic communications, word processing files (e.g., Microsoft Word), computer slide presentations (e.g., PowerPoint or Keynote slides), spreadsheets (e.g., Excel), and PDFs. ESI, as used herein, has the same meaning as in Rules 26 and 34 of the Federal Rules of Civil Procedure and includes Electronic Documents or Data and other computer-generated information or data stored in or on any storage media located on computers, file servers, hard disk drives, USB drives, tape drives, online/cloud storage services, and any other real or virtualized device or medium in the Parties' possession, custody or control.

4.    "Extracted Full Text" means the full and complete text that is electronically extracted from native electronic files, and includes all header, footer, and document body text.

5.    "Hard-Copy Document" means documents existing in paper form at the time of collection.

6.      "Hash Value" is a unique alphanumerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the data set (the most commonly used algorithms, known as MD5 and SHA-1, will generate alphanumerical values so unique that the chance of any two data sets having the same Hash Value, no matter how similar they appear, is less than one in one billion).

7.      "Load file" means an electronic file containing information identifying a set of paper-scanned images, processed ESI, or native format files, as well as the corresponding Extracted Full Text or OCR text files, and containing agreed-upon extracted or user-created metadata, as well as information indicating unitization (i.e., document breaks and document relationships such as those between an email and its attachments) used to load that production set into a document review platform and correlate its data within that platform. A load file is used to import all image, native, and text files and their corresponding production information into a document database. Parties shall produce a load file for all produced documents with each particular production in accordance with the specifications provided herein.

8.      "Medium" or "Media" means an object or device, real or virtual, including but not limited to a disc, tape, computer, or other electronic device on which data is or was stored.

9.      "Metadata" means: (i) information embedded in or associated with an electronic file that describes the characteristics, origins, usage, and/or validity of the electronic file; (ii) information generated automatically by the operation of a computer or other information technology system when an electronic file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system; (iii) information, such as Bates Numbers, redaction status, privilege status, or confidentiality status created during the course of processing documents or ESI for production; and (iv) information collected during the course of collecting documents or ESI,

such as the name of the media device on which it was stored or the custodian or non-custodial data source from which it was collected. Nothing in this order shall require any party to manually populate values for any metadata field.

10.    "Native Format" or "Native File" means the format of ESI in which it was generated and/or used by the Parties in the usual course of their business and in their regularly conducted activities (for example, the native format of an Excel workbook is an .xls or .xlsx file).

11.    "Near-Native Format" means a format of ESI derived from a Native File that retains all or as much as possible of existing content, metadata, and essential functionality of the Native File in a different, often more easily accessible file type.

12.    "Optical Character Recognition" or "OCR" means the conversion of non-searchable representations of typed, handwritten, or printed text (whether from a Native File, scanned or photographed document, or otherwise) into machine-encoded text that is visible, legible, and searchable.

## III.    DE-DUPLICATION

1.    To the extent exact duplicate Documents reside within a Producing Party's ESI data set, the Producing Party may produce only a single copy of each such Document. "Exact Duplicate" means bit-for-bit identity of the Document content with exact hash value matches—so-called "near duplicates" will not be encompassed by this definition.

2.    To the extent a Producing Party de-duplicates its Documents, it shall de-duplicate standalone Documents or Document families in their ESI sources by the use of MD5, SHA-1, or SHA-256 hash values. Where any such Documents have attachments, hash values must be identical for both the Document plus-attachment (including associated metadata) as well as for any attachment (including associated metadata) standing alone.

3.    A Producing Party may de-duplicate Documents across custodians and populate a

field of data that identifies each custodian who possessed a copy of the produced Document (the "Duplicate Custodian" field) in addition to a separate field of data identifying the custodian whose Document is produced; such de-duplicated Documents shall be deemed produced from the custodial files of each such identified custodian for all purposes in this litigation, including for use at deposition and trial. A Producing Party shall use a uniform description of a particular custodian across productions. Multiple custodians in the "Duplicate Custodian" field shall be separated by a semicolon.

4.      No Party shall identify and/or eliminate duplicates by manual review or some method other than by use of the technical comparison using hash values outlined in section III.2 above.

5.      Hard-Copy Documents shall not be eliminated as duplicates of ESI.

6.      If the Producing Party makes supplemental productions following an initial production, that Party also shall provide with each supplemental production an overlay file to allow the Receiving Party to update the "Duplicate Custodian" field. The overlay file shall include all custodians listed in the "Duplicate Custodian" field in prior productions and any custodians newly identified in the current supplemental production.

## IV.    PRODUCTION FORMAT AND PROCESSING SPECIFICATIONS

1.      Standard Format: Unless otherwise specified in section IV.2 or pursuant to section IV.11 below, the Parties shall produce Documents in tagged image file format ("TIFF"). TIFFs of ESI shall convey the same information and text/images as the original document, including all commenting, versioning, and formatting that is visible in any view of the document in its native application. All hidden text will be expanded, extracted, and rendered in the TIFF file and, to the extent possible, the Producing Party will instruct its vendor to force off Auto Date. Any TIFFs produced shall be single-page, 300 DPI, Group IV TIFF files. After initial production in image file

format is complete, a party must demonstrate particularized need for production of ESI in its native

format.

2.      <u>Native Format</u>: Except as provided by section IV.11 below, the Parties shall produce

all spreadsheets, audio files, video files, and other file types that cannot be accurately represented

in TIFF format in Native Format—provided, however, that the Parties shall meet and confer

regarding the appropriate format of production for databases and structured data, if any (e.g.,

Microsoft Access, Oracle, or other proprietary databases). For each Document produced in Native

Format, a Producing Party shall also produce a corresponding TIFF cover page, specifying that the

Document has been "produced in Native Format" and endorsed with the Bates Number and

Confidentiality Designation, if applicable, which will be inserted into the image population in

place of the Native File. When the Native File is produced, the Producing Party shall preserve the

integrity of the electronic Document's contents, i.e., its original formatting and metadata.

3.      <u>Color</u>: Documents containing color shall be produced in color.  Documents

produced in color will be produced in either TIFF or JPEG format.

4.      <u>Embedded Objects</u>: If Documents contain embedded objects, the Parties shall

extract the embedded objects as separate Documents and treat them as attachments to the

Document to the extent reasonably possible. Images embedded in emails shall not be extracted and

produced separately to the extent reasonably possible.

5.      <u>Load Files</u>: Each production of ESI and Documents shall be accompanied

by Concordance or comma-delimited load files (.dat and .opt) containing a field with the full path

and filename to files produced in Native Format and also containing metadata fields identified in

Appendix A, to the extent the information is available in the original ESI file and can be extracted

without unreasonable burden using standard litigation support processing platforms (except for

vendor-generated fields related to the litigation production, such as "ProdBeg," "ProdEnd," bases for redaction, and Confidentiality Designations).

6.      <u>.Txt Files</u>: For all Documents containing extracted full text or OCR text, the Producing Party shall provide searchable document-level .txt files (named using the Bates start/"BegDoc"), which shall reside in the same file directory as the images for such Documents.

7.      <u>Compressed Files</u>: Compression file types (e.g., .CAB, .GZ, .RAR. .ZIP), shall be decompressed to ensure that a compressed file within a compressed file are decompressed into the lowest possible compression resulting in individual folders and/or files.

8.      <u>Bates Numbering and Other Unique Identifiers</u>: Every item or file of ESI that is produced shall be identified by a unique page identifier ("Bates Number") and a Production Volume Number for any storage device (e.g., CD, USB, hard drive) containing such files. All Bates Numbers will consist of an Alpha Prefix – which shall uniquely identify the specific Party producing the document (*i.e.*, the specific Party from whose possession, custody, or control the document was obtained) – followed by a numeric page index.  There must be no spaces in any Bates Number. Any numbers with fewer than 8 digits will be front padded with zeros to reach 8 digits. All ESI produced in TIFF format shall contain a unique Bates Number on each page of the document, electronically "burned" onto the image at a location that does not obliterate, conceal, or interfere with any information from the source Document.

9.      <u>Technical Problems</u>: If a member of a Document family that has otherwise been determined to be responsive cannot be technically processed (e.g., unsupported file format, file corruption, inaccessible password-protected document), those technical problems shall be identified and disclosed to the Receiving Party  by production of a Bates-labeled slip sheet that states "Technical issue—file cannot be processed," and identifying in the production's

accompanying DAT file any document requiring a technical issue slip sheet; the associated metadata for the file with the technical problem shall be produced if technically possible.  A Receiving Party thereafter may raise with the Producing Party any questions or concerns, and the Parties shall meet and confer to attempt to resolve any issues.

10.     Hard-Copy Documents: Except as otherwise set forth in this paragraph, the Parties agree that responsive paper Documents will be scanned and produced electronically, and converted to single-page TIFF files and produced under the same protocols set forth above, including the production of OCR text that is generated to make such Documents searchable. All paper Documents will be scanned and produced electronically unless a Party establishes good cause for making such Documents available via paper and reasonable access is provided to the opposing Party to review the documents directly. In scanning all Hard-Copy Documents, Hard-Copy Documents should be logically unitized. Accordingly, distinct Documents should not be merged into a single record, and single Documents should not be split into multiple records. In the case of an organized compilation of separate Documents (for example, a binder containing several separate Documents behind numbered tabs), each of the Hard-Copy Documents should be separately scanned, but the relationship among the Documents in the compilation should be reflected in the proper coding of the beginning and ending Documents and attachment fields. The Parties will make their best efforts to unitize the Documents correctly. Producing Hard-Copy Documents as provided herein does not change their character from Hard-Copy Documents into ESI. For Hard-Copy Documents, the Parties need only populate the following metadata fields: "ProdBeg," "ProdEnd," "Prod Volume," "Custodian," "Source," "Confidential," and "Redaction," as well as "ProdBegAtt" and "ProdEndAtt" where applicable.

11.     Confidentiality Designation: To the extent any Document or ESI (or portion

thereof) produced as a TIFF image in accordance with this Order is designated as "Confidential" under any order concerning confidentiality agreed to and/or entered by the Court in this litigation, the Producing Party shall brand the required Confidentiality Designation in a corner of any TIFF images representing the produced item and in a consistent font type and size that does not obscure any part of the underlying image or Bates Number, to the extent possible. If a document is produced in native format, the TIFF image cover page as detailed in section IV.2. above shall contain the confidential designation and text stating the document has been produced in native format.

12.     <u>Redactions</u>: A Party may use redactions to protect attorney-client or work product privileges consistent with the Protective Order; however, no redactions for relevance may be made within a produced Document or ESI item. Any redactions shall be clearly indicated on the face of the Document, with each redacted portion of the Document stating that it has been redacted and the basis for the redaction, and a metadata field shall indicate that the Document contains redactions and the basis for redaction (e.g. "A/C Privilege"). Where a responsive Document contains both redacted and unredacted content, the Producing Party shall produce the remainder of the non-redacted portions of the Document and the text/OCR corresponding to the non-redacted portions. Email header information (e.g., date, subject line, recipient(s), etc.) should not be redacted unless it is independently privileged. The production of a Document in a redacted form does not affect the Producing Party's obligation to timely assert and substantiate the assertion of privilege over the content in a privilege log. Redacted versions of computer slide presentations shall be produced in color in TIFF or JPEG format. The Parties shall honor reasonable requests for the production of particular redacted documents in other formats where the TIFF or JPEG image is not reasonably usable.

13.     <u>Parent-Child Relationships</u>: The Parties acknowledge and agree that parent-

child relationships within a Document family (the association between an attachment and its parent Document or between embedded Documents and their parent) shall be preserved. Responsive non-privileged electronic Documents attached to an email or embedded within other electronic Documents, and Hard-Copy Documents attached or appended to Hard-Copy Documents, must be mapped to their parent by the beginning Bates Number and immediately follow the parent in the sequence of the production. For email attachments and embedded files or links, "BegAttach" and "EndAttach" fields, listing the unique beginning Bates Number of the parent Documents and ending number of the last attachment, must be populated for each child and parent Document.

14.     <u>OCR</u>: OCR software shall be set to the highest quality setting during processing.

15.     <u>ESI Date and Time Processing</u>: Each Party's ESI should be processed using a consistent Time Zone for all data.  The Party shall share the Time Zone selected for processing of its data with the other Party.

16.     <u>Deviation from Production Specifications</u>: If a particular Document or category of Documents warrant a different production format or protocol than described herein, the Parties will cooperate in good faith to arrange for a mutually acceptable alternative.

17.     <u>Password Protection</u>: In the event any Document or ESI (or portion thereof) produced is password protected, the Parties shall make all reasonable efforts to provide the password needed to access the Document or ESI.

**V.     PRODUCTION MEDIA**

The Producing Party shall produce Documents on readily accessible computer or electronic Media, including CD, DVD, USB drive, external hard drive (with standard interface), via a secure FTP site or online file storage service accessible by web browser, or using such other medium as the Parties may agree (the "Production Media"). Each piece of Production Media shall be encrypted and assigned a production number or other unique identifying label ("Production

Volume Number") corresponding to the date of the production of documents on the Production Medium and the sequence of the material in that production, and shall include (a) the name of the litigation and the case number; (b) the identity of the producing Party; (c) the production date; (d) the Bates Number range of the materials contained on such Production Media item; and (e) the Production Volume Number of the Production Media. The Producing Party shall accompany all Document productions with a transmittal cover letter or email identifying by Bates Number the documents produced. If the Producing Party produces documents via a secure FTP site or online file storage service accessible by web browser, the Producing Party shall specify the date through which the materials will remain available and the Producing Party shall, within a reasonable time, accommodate requests from another Party or Parties that documents be reposted to the FTP site.

## VI.    Privilege and Privilege Logs

1.      The Parties agree that they need not initially exchange the text of litigation hold/retention instructions issued in this litigation.

2.      The parties agree that certain privileged communications or documents need not be included in a privilege log: (a) communications about this litigation to or from outside legal counsel; (b) communications from inside counsel about this litigation, and/or (c) work product about this litigation.

3.      In an effort to avoid unnecessary expense and burden, the Parties agree that, for documents redacted or withheld from production on the basis of attorney-client privilege, work product doctrine and/or any other applicable privilege, the Producing Party will prepare a summary log containing, for each document (except those exempted above) claimed as privileged, an export of all or a subset of the metadata fields listed below (as agreed upon by the Parties) to the extent such information exists and has not been suppressed or redacted for privilege.  The export should include the following information from the top line email:

- PRODBEG (or other unique identifying control number, if not produced)

- PRODEND (or other unique identifying control number, if not produced)

- PRODBEGATT (if produced)

- PRODENDATT (if produced)

- CUSTODIAN

- FROM

- TO

- CC

- BCC

- SUBJECT

- SENTDATE

- FILENAME

- AUTHOR

- CREATEDATE

- MD5 HASH

- PRIV_TYPE

If the requesting party requires further information, it shall explain in writing the need for such information and identify, by Bates Number or other unique identifier, each document for which it seeks this information. Within fourteen (14) days of such a request, the Producing Party must either (i) provide the requested information or (ii) challenge the request. If a Party challenges a request for further information, the Parties shall meet and confer to try to reach a mutually agreeable solution. If they cannot agree, the Parties must request a conference with the Court before any motions may be filed.

## VII.   COST SHIFTING

The costs of production pursuant to this Order shall be borne by the Producing Party. However, in agreeing to this Order, no Party waives or relinquishes any right or interest it may have under the Federal Rules of Civil Procedure to seek cost shifting or apportionment for the costs of electronic discovery.

## VIII.   THIRD-PARTY ESI

1.      A Party that issues a nonparty subpoena (the "Issuing Party") shall include a copy of this Order and the Protective Order with the subpoena and state that the Parties in the litigation have requested that third parties produce documents in accordance with the specifications set forth herein.

2.      The Issuing Party shall produce a copy to all other Parties of any Documents and ESI (including any metadata) obtained under subpoena to a nonparty.

3.      If the nonparty production is not Bates-stamped, the Issuing Party will endorse the nonparty production with a unique Bates prefix and numbering scheme prior to reproducing it to all other Parties.

## IX.   BEST EFFORTS COMPLIANCE & DISPUTES

The Parties agree to use their best efforts to comply with and resolve any differences concerning compliance with any provision of this Order. If a Producing Party cannot comply in a particular circumstance with this Order, such Party shall promptly inform the Receiving Party in writing why compliance with the Order is not reasonable or feasible. No Party may seek relief from the Court concerning compliance or non-compliance with the Order until they have met and conferred with the other Party in a good faith effort to resolve or narrow the area of disagreement.

## X.   MODIFICATION

This Order may be modified by a Stipulated Order of the Parties or by the Court for good

cause shown.

**SO STIPULATED AND AGREED**

Dated: March 18, 2024

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ Eli B. Richlin

Eli B. Richlin
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (866) 974-7329
Email: erichlin@wsgr.com
Email: sbricker@wsgr.com

PAUL HASTINGS LLP
Susan K. Leader
1999 Avenue of the Stars, 27th Floor
Los Angeles, California 90067
Telephone: (310) 620-5700
Facsimile: (310) 620-2841
Email: susanleader@paulhastings.com

PAUL HASTINGS LLP
Paul C. Gross
Sara N. Bricker
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
Facsimile: (212) 319-4090
Email: paulgross@paulhastings.com

*Counsel for Defendants RWE Renewables*
*Americas, LLC and RWE Renewables Services,*
*LLC*

**SO ORDERED**
Dated: New York, New York
         March 19        , 2024

Dated: March 18, 2024

BAUGHMAN KROUP BOSSE PLLC

By: /s/ Nathaniel E. Marmon

John F. Baughman
George W. Kroup
Nathaniel E. Marmon
One Liberty Plaza, 46 Fl.
New York, NY 10006
(212) 548-3212

*Attorneys for Plaintiffs Trireme*
*Energy Holdings, Inc. and Trireme*
*Energy Development, LLC*

_____
JENNIFER L. ROCHON
United States District Judge

## APPENDIX A: METADATA FIELDS

| Field Name | Example / Format | Description |
|---|---|---|
| PRODBEG | ABC00000001 (Unique ID) | The Document ID Number associated with the first page of the document. |
| PRODEND | ABC00000003 (Unique ID) | The Document ID Number associated with the last page of the document. |
| PROD_VOL | VOL001 | The name of CD, DVD or Hard Drive (vendor assigns). |
| PRODBEGATT | ABC00000001 (Unique ID Parent-Child Relationships) | The Document ID Number associated with the first page of the parent document. |
| PRODENDATT | ABC00000008 (Unique ID Parent-Child Relationships) | The Document ID Number associated with the last page of the last attachment. |
| CUSTODIAN | [Name of Custodian] | The name of the custodian, if applicable. |
| CUST_APPND | [Name of Custodian] | Other custodians that also had a duplicate of the record. |
| DOCTYPE | EMAIL | Type of document (EMAIL, ATTACHMENT, EFILE, HARDCOPY). |
| FILENAME | Document Name.xls | The file name of a document. |
| FILEEXT | XLS | The file extension of a document. |
| FILESIZE | Numeric | The file size of a document (including imbedded attachments). |
| APPLICATION | Outlook | Application used to create the native file (Excel, Word, Outlook, PDF). |
| SORTDATE | MM/DD/YYYY | Last Modified date for efile, SENTDATE for email, Sent Date for Email attachments |
| CREATEDATE | MM/DD/YYYY | The date the document was created.<br><br>*Parties acknowledge that the CREATEDATE field may not actually reflect the date the file was created, due to the ease of change to that field and the technical definition of the field (e.g., the created date and time reflects the date when the file was created in that particular location on the computer or on the other storage device location) |
| LASTMODIFIED | MM/DD/YYYY | The date the document was last modified. |
| SENTDATE | MM/DD/YYYY | The date the email was sent. |
| SENTTIME | HH:MM | The time the email was sent. |
| SUBJECT | | The subject line of the e-mail. |
| TITLE | | The extracted document title of a document. |
| AUTHOR/FROM | Joe Smith <jsmith@email.com> | The display name or e-mail of the sender of an e-mail. |
| RECIPIENT/TO | Joe Smith <jsmith@email.com>; tjones@email.com | The display name or e-mail of the recipient(s) of an e-mail. |
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name or e-mail of the copyee(s) of an e-mail. |

| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name or e-mail of the blind copyee(s) of an e-mail. |
|---|---|---|
| MD5HASH (or equivalent) | | The MD5 Hash value or "de-duplication key" assigned to a document. |
| DOCLINK | D:\NATIVES\ABC000001.xls | The relative path to a native copy of a document if provided. |
| PRIV_TYPE | Attorney-Client; Attorney Work Product | The type of privilege claimed, if applicable |